UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

THE TRUSTEES OF THE UNITE HERE
NATIONAL HEALTH FUND and THE          :          06 Civ. 5316 (WHP)(DF)
TRUSTEES OF THE UNITE HERE NATIONAL
RETIREMENT FUND,                      :          **REPORT AND**
                                                 **RECOMMENDATION**

                        Petitioners,          :

         -against-                      :

AMERICAN LEATHER PRODUCTS, L.L.C.,    :

                      Respondent.           :
------------------------------------------------------------X

**TO THE HONORABLE WILLIAM H. PAULEY, III., U.S.D.J.:**

## INTRODUCTION

      Pursuant to Sections 502(a) and (f) of the Employee Retirement Income Security Act, as amended ("ERISA"), 29 U.S.C. § 1132 (a) and (f), and Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), the Trustees of the Unite Here National Health Fund (the "Health Fund") and the Trustees of the Unite Here National Retirement Fund (the "Retirement Fund") (collectively "Petitioners" or the "Funds"), have petitioned this Court to confirm an arbitration award issued against American Leather Products, LLC ("Respondent"). (*See* Petition to Confirm Arbitration Award, dated July 13, 2006 ("Pet.") (Dkt. 1); Memorandum of Law in Support of Petition to Confirm Arbitration Award, dated Aug. 1, 2006 (Dkt. 4).) Respondent has not answered or otherwise appeared in this proceeding.  For the reasons that follow, I recommend that, upon Respondent's default, Petitioners' motion to confirm the arbitration award (Dkt. 3) be granted in part and denied in part, and that judgment be entered in the total amount of $22,183.25 (representing $19,914.66 for the Health Fund and $2,268.59 for the Retirement Fund), with pre-judgment interest of 11.75%, to be calculated by the Clerk of the

Court from the date of the arbitration award to the date of judgment.  I further recommend that Petitioners' application for attorneys' fees and costs incurred in the prosecution of this action be granted in part and denied in part, as set forth below.

## BACKGROUND

### A.   Factual Background

As alleged in the Petition and Petitioners' additional submissions, the relevant facts are as follows:

Petitioners are employee benefit plans as defined in Section 3(3) of ERISA, 29 U.S.C. § 1002(3), established pursuant to an agreement and declaration of trust and by a series of collective bargaining agreements entered into between the Amalgamated Clothing and Textile Workers Union, AFL-CIO, CLC, known as UNITE HERE (the "Union"), and employers in the men's and boy's clothing industry.  (Pet., at ¶ 2.)  The Funds maintain their principal office at 730 Broadway, New York, New York 10003.  (*Id.*)

Respondent is a successor to C & S Leather Products, LLC, (*see* Declaration of David C. Sapp, Esq. in Support of Application for an Award of Damages, Interests and Costs, dated May 23, 2008 ("Sapp Decl.") (Dkt. 17), at ¶ 4), and is a party to a collective bargaining agreement with an affiliate of the Union (*id.*; *see* Collective Bargaining Agreement between Local 292H, New York-New Jersey Regional Joint Board, Unite, AFL-CIO and C & S Leather Products, dated Feb. 2002 ("CBA"), attached as Ex. A to Sapp Decl.).

At all relevant times, Respondent was bound by the terms of the CBA,[1] which obligated Respondent to make contributions to Petitioners' Health and Retirement Funds.[2]  (Pet., at ¶ 3.) Specifically, Respondent was required to contribute "$125 effective March 1, 200[4],[3] per employee per month" to the Health Fund (CBA, at ¶ 20); and to contribute "one (1%) percent of its gross weekly payroll, including overtime," to the Retirement Fund (id., at ¶ 21).  The CBA also provided that

> [a]ny difference between [the parties] arising out of [the CBA] or the conduct or relations of the parties or any other matter which has not been resolved between the parties shall be referred by the Union to Marilyn M. Levine, Impartial Chair of the Millinery Industry, or her successor or designee, as Arbitrator to hear and determine the dispute.

(Id., at ¶ 17.)  The CBA further provided that the Arbitrator's decision "shall be conclusive and binding upon both parties, and may be enforced in court," and that "the costs of the arbitration shall be shared equally" between the parties.  (Id.)

According to Petitioners, a dispute arose from Respondent's alleged failure to make contributions to the Health and Retirement Funds for certain periods during 2004 and 2005.  (See Pet., at ¶¶ 4-5.)  Accordingly, Petitioners commenced arbitration by serving a Notice of Intention

---

[1] The CBA was in effect from March 1, 2002 until March 1, 2005 (CBA, at ¶ 32), and was then extended for three years until March 1, 2008 (see Proposals for Negotiations Between Respondent, Successor of C&S Leather Products, and New York Metropolitan Area Joint Board, Local 155, attached to the CBA).

[2] At the time the CBA became effective on Mar. 1, 2002, the Funds were known as the Greater New York Welfare Fund and National Retirement Fund, Headwear Division.  (See Pet., at ¶ 3 nn.1-2.)

[3] Although the CBA states an effective date of March 1, 2002 for this rate of $125, it appears from context that this is in error, and that the date should be March 1, 2004.  (See id., at ¶ 20 (stating, as written, that "[t]he Employer agrees to contribute $115 effective March 1, 2002, $120 effective March 1, 2003, and $125 effective March 1, 2002 . . .").)

to Arbitrate, dated January 18, 2006.  (Petitioner's Proposed Findings of Fact and Conclusions of Law, dated Feb. 2, 2007 ("Proposed Findings") (Dkt. 11), at ¶ 9.)  Respondent did not move to stay the arbitration, and a hearing was held before Arbitrator Marilyn M. Levine, Esq., on May 25, 2006.  (*Id.*, at ¶¶ 10-11.)  Although Respondent was given notice of the hearing (*id.*, at ¶ 9), it did not appear (*id.*, at ¶ 12).

Noting that Respondent had failed to respond to a subpoena requiring it to produce at the hearing all relevant books and records for the requested time period, the Arbitrator, "based on evidence made available" by Petitioners, concluded that Respondent had violated the CBA and failed to make contributions to the Funds.  (Findings and Award of Arbitrator, dated May 25, 2006 ("Findings & Award"), attached to Pet. as Ex. A., at 2.)  The Arbitrator awarded damages in the total amount of $24,064.09,[4] constituting (1) unpaid contributions to the Health Fund in the principal amount of $18,827.50, (2) unpaid contributions to the Retirement Fund in the principal amount of $3,228.73, (3) $1,325.86 in interest on the unpaid contributions in accordance with Section 502(g)(2) of ERISA, and (4) $500 in Arbitrator's fees, $32 in Auditor's fees and costs, and $150 in legal fees.  (*See id.*, at 2-4.)  The Arbitrator further directed that the parties were to share equally in Arbitrator's costs of another $500.  (*Id.*, at 4.)

### B.   Procedural History

After Respondents allegedly failed to pay any part of the arbitration award (Pet., at ¶ 9), Petitioners filed the instant petition on July 14, 2006, seeking an order confirming the arbitration award, together with interest accrued from the date of the arbitration award to the date of

---

[4] It appears the Arbitrator incorrectly stated the sum of the amounts awarded to Petitioners to be $24,084.09.

judgment, and fees and costs incurred in prosecuting this action (*id.*, at 3).  On August 7, 2006, Petitioners served and filed a motion to confirm the award.  (*See* Dkts. 3, 5-7.)

When Respondent then failed to appear, the Honorable Robert L. Carter, United States District Judge, before whom this matter was then pending, referred Petitioners' motion to me on January 5, 2007, for an inquest and to report and recommend concerning damages.  (Dkt. 8.)  In a Scheduling Order dated January 18, 2007, this Court directed Petitioners to submit Proposed Findings of Fact and Conclusions of Law on the issue of damages no later than February 19, 2007.  (Dkt. 9.)  The Court also directed Respondent to submit its response by March 21, 2007. (*Id.*)

Although Petitioners timely submitted their Proposed Findings, their submission did not include any supporting papers (*see* Proposed Findings), and, on April 4, 2008, this Court issued another Order, in which it directed Petitioners to submit a supplemental affidavit or declaration, no later than May 2, 2008, demonstrating how Petitioners arrived at their proposed damages figure (Dkt. 12).  After the Court granted Petitioners an extension of time to make that supplemental submission (Dkt. 16), Petitioners served and filed a declaration in support of their application for an award of damages, interest and costs (Dkts. 17, 18).  To date, Respondent has not filed any response, either to Petitioners' Proposed Findings, or to Petitioners' supplemental submission, nor has Respondent contacted the Court to request a hearing.

**DISCUSSION**

I.     **APPLICABLE LEGAL STANDARDS**

       A.     **Summary Judgment Standard**

       "Default judgments in confirmation/vacatur proceedings are generally inappropriate."

*D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 109 (2d Cir. 1006); *Trs. of the Unite Here Nat'l*

*Health Fund v. JY Apparels, Inc.*, 07 Civ. 6515 (RJH), 2008 U.S. Dist. LEXIS 14051, at *4

(S.D.N.Y. Feb. 26, 2008).  A court "should treat an unanswered petition to confirm/vacate as an

unopposed motion for summary judgment."  *D.H. Blair & Co.*, 462 F.3d at 110.

       A motion for summary judgment may be granted when the parties' sworn submissions

show that "there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996).  The

moving party bears the burden of showing that no genuine issue of material fact exists.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Accordingly, the Court must "view the

evidence in the light most favorable to the party against whom summary judgment is sought and

must draw all reasonable inferences in his favor."  *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d

81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

587 (1986)); *Sista v. CDC Ixis N. Amer., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

       Although a party's "failure to contest issues not resolved by the record will weigh against

it," *D.H. Blair & Co.*, 462 F.3d at 109, a court may not simply confirm an arbitration award

because the motion to confirm is unopposed.  Rather, as on any summary judgment motion, the

Court must "'first examin[e] the moving party's submission to determine if it has met its burden

of demonstrating that no material issue of fact remains for trial.'" *N.Y. City Dist. Council of Carpenters Pension Fund v. Unique Installers, Inc.,* No. 07 Civ. 6931 (DLC), 2007 U.S. Dist. LEXIS 85178, at *4 (S.D.N.Y. Nov. 19, 2007) (quoting *D.H. Blair & Co.*, 462 F.3d at 109-10)); *see also Vt. Teddy Bear Co., Inc. v. 1-800-BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *Travel Wizard v. Clipper Cruise Lines*, No. 06 Civ. 2074 (GEL), 2007 U.S. Dist. LEXIS 163, at *5-6 (S.D.N.Y. Jan. 3, 2007) ("[E]ven where one party altogether fails to respond to a motion to vacate or confirm an award . . . district courts should assess the merits of the record rather than merely entering a default judgment."); *N.Y. City Dist. Council of Carpenters Pension Fund v. Brookside Contracting Co., Inc.*, No. 07 Civ. 2583 (WHP), 2007 U.S. Dist. LEXIS 83848, at *3 (S.D.N.Y. Nov. 14, 2007) (same).[5]

"Nonetheless, in the context of a petition to confirm an arbitration award, the burden is not an onerous one." *N.Y. City Dist. Council of Carpenters Pension Fund v. Angel Construction Group, LLC*, No. 08 Civ. 90601 (RJS), 2009 U.S. Dist. LEXIS 7701, at *3 (S.D.N.Y. Feb. 2, 2009). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co.*, 462 F.3d at 110 (internal citation omitted). "The arbitrator's rationale for an award need not be

---

[5] The law in this regard is consistent with the principle that, even when a default judgment is entered as to liability in a case, the Court may not simply accept the parties' pleadings as establishing the claimed damages. *See, e.g., Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (finding that "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true"); *N.Y. State Teamsters Conference Pension & Retirement Fund v. Comac Builders Supply Corp.*, No. 06 Civ. 208 (FJS)(GHL), 2009 U.S. Dist. LEXIS 26287, at *4-5 (N.D.N.Y. Mar. 28, 2009) (holding that a court "must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty" (internal quotation omitted)).

explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" *Id.* (quoting *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)). "Only a 'barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *Id.* (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union,* 954 F.2d 794, 797 (2d Cir. 1992).[6]

### B.   Judicial Review of Labor Arbitration Awards

In particular, "[j]udicial review of a labor-arbitration decision pursuant to [a collective bargaining] agreement is very limited." *Allied Int'l Union v. Tristar Patrol Servs., Inc.*, No. 06 Civ. 15515 (LAP), 2007 U.S. Dist. LEXIS 72748, at *11 (S.D.N.Y. Sept. 26, 2007) (quoting *Major League Baseball Players Ass'n. v. Garvey*, 532 U.S. 504, 509 (2001)); *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (holding that "arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation" (internal citation omitted)).  When reviewing an award under Section 301 of the LMRA, the Court should uphold an arbitration award as long "as it draws its essence from the collective bargaining agreement." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960); *Supreme Oil Co., Inc. v. Abondolo*, 568 F. Supp. 2d 401, 405-406 (S.D.N.Y. 2008).

_____

[6] Conversely, where a party seeks to vacate or modify an arbitration award, that party will bear the burden of proof, "'and the showing required of that party . . . to avoid summary affirmance of that award is high.'"  *HRH Construction, LLC v. Local No. 1, Int'l Union of Elevator Constructors,* No. 03 Civ. 8944 (DC), 2005 U.S. Dist. LEXIS 132, at *13 (S.D.N.Y. Jan. 4, 2005)(quoting *DeGaetano v. Smith Barney, Inc.*, 983 F. Supp. 459, 461 (S.D.N.Y. 1997).

Although the Federal Arbitration Act ("FAA") "does not apply to 'contracts of employment of . . . workers engaged in foreign or interstate commerce,' 9 U. S. C. § 1, . . . federal courts have often looked to the Act for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the [LMRA] . . . empowers the federal courts to fashion rules of federal common law to govern '[s]uits for violation of contracts between an employer and a labor organization' under the federal labor laws." *Unites Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987) (internal citation omitted); *see N.Y. City Dist. Council of Carpenters Pension Fund v. B&A Interiors, Ltd.*, No. 07 Civ. 5620 (RJS), 2009 U.S. Dist. LEXIS 12401, at *5-6 (S.D.N.Y. Jan. 22, 2009). The FAA provides limited circumstances in which an arbitration award may be modified, including that there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award. 9 U.S.C. § 11(a); *see Brookside Contracting Co.,* 2007 U.S. Dist. LEXIS 83848, at *4. "The miscalculation must be 'clear on the face of the award or . . . clearly inferred therefrom.'" *Brookside Contracting Co.,* 2007 U.S. Dist. LEXIS 83848, at *5 (quoting *Al-Azhari v. Merit Capital Assocs., Inc.*, No. 99 Civ. 9795 (LAK), 2000 U.S. Dist. LEXIS 3635, at *7 (S.D.N.Y. Feb. 14, 2000)).

## II.   PETITION TO CONFIRM THE ARBITRATION AWARD

In their Petition and Proposed Findings, Petitioners seek confirmation of the Arbitrator's award as issued, in the sum of $24,064.09, together with interest from the date of the award to the date of judgment. (Pet., at 3; Proposed Findings, at ¶ 15.) Petitioners also seek to recover the reasonable attorneys' fees and costs incurred in this action (*see id.*), although, from their most recent submission, it is not clear that Petitioners are still pressing their demand for fees.

A.      **Unpaid Contributions To the Funds**

1.      **The Health Fund**

The Arbitrator awarded judgment to the Health Fund for unpaid contributions in the principal amount of $18,827.50.  (*See* Findings & Award at 2.)  According to Petitioners, this amount was not based on actual payroll records (which were in Respondent's possession and were apparently never presented during the arbitration), but rather were based on estimates of the Fund contributions that were past due.  (*See* Sapp. Decl., at ¶ 8 n.1.)  Petitioners state that they have now been able to revise those estimates based on "additional payroll data obtained by the Funds" (*id.*), although they neither explain what this "additional payroll data" is, nor submit it to the Court.  Based on a spreadsheet they have provided that purportedly incorporates this data (*see id.,* Ex. C), Petitioners assert that the amount owed by Respondent to the Health Fund is actually $19,562.50,[7] which is slightly higher than the amount awarded by the Arbitrator.

In the face of Respondent's non-appearance at the arbitration hearing, and in the absence of formal payroll records that Respondent was required to maintain and provide, the Arbitrator was entitled to rely on estimates to effectuate the intent of the CBA.  *See Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 451-452 (S.D.N.Y. 2005) (upholding arbitrator's award of lost profits damages where the damages had at least a "barely colorable justification" in the record (internal citation omitted)); *Getko Group, Inc., v. AMICA Mutual Ins. Co.*, No. 03 Civ. 5876 (VM), 2003 U.S. Dist. LEXIS 19238, at *3, 7-9 (S.D.N.Y. Oct. 28, 2003) (denying motion to vacate arbitration award where arbitrator admittedly relied on 'somewhat vague' post hearing

---

[7] Petitioners calculate this figure by multiplying the CBA-established rate for Health Fund contributions per employee ($125) by the number of employees purportedly employed for each month at issue.  (*See* Sapp. Decl., at ¶ 7.)

submission in awarding damages, because there is support for the proposition that New York law permits imprecise and even somewhat speculative contract damages in arbitration proceedings); *Dufuerco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003) ("Even where explanation for an award is deficient or non-existent, [a court] will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.").  Moreover, although Petitioners' current estimates of the number of employees for which benefits contributions were required are asserted only "on information and belief" (Sapp. Dec., at ¶ 7), the evidence necessary to confirm an arbitration award need only be "colorable," as noted above, *D.H. Blair & Co.*, 462 F.3d at 110, and the basis for the award need only to appear to have been drawn from the "essence" of the CBA, *Supreme Oil Co.*, 568 F. Supp. 2d at 405-06.

Given the imprecision in Petitioners' numbers and the lack of documentation to support Petitioners' estimates, it cannot be said that the arbitration award contains an evident material mistake, *see Brookside Contracting Co.,* 2007 U.S. Dist. LEXIS 83848, at *5, and, therefore, I do not recommend that it be modified so as to *increase* the award to the Health Fund.  *See, e.g., Data-Stream AS/RS Technologies, LLC v. China Int'l Marine Containers, Ltd.*, No. 02 Civ. 6530, 2003 U.S. Dist. LEXIS 19903, at *11-12 (S.D.N.Y. Nov. 5, 2003) (applying the FAA and denying plaintiff's application to increase amount of award issued by arbitrator, as plaintiff submitted no evidence that arbitrator failed to consider evidence or that the award contained a mathematical miscalculation).  Yet, as (1) Petitioners have made a colorable showing that the Health Fund is entitled to at *least* the amount awarded by the Arbitrator (*see* Sapp. Decl., ¶ 7 and Ex. C), (2) it appears that the Arbitrator relied on the formulas contained in the CBA in reaching her decision (*see* Findings & Award, at 2), and (3) there is no evidence before this Court that, in

11

determining the amount owed to the Health Fund, the Arbitrator acted outside her authority or illegally, I do recommend that the award to the Health Fund – in the amount determined by the Arbitrator – be confirmed.

## 2.    The Retirement Fund

As for the Arbitrator's award to the Retirement Fund, the calculations that Petitioners have now submitted to the Court support a *lower* amount due than that which the Arbitrator awarded.  Specifically, the Arbitrator awarded $3,228.73 to the Retirement Fund (*see* Findings & Award, at 3; Sapp Decl., at ¶ 6), but Petitioners' spreadsheet shows an estimated calculation of unpaid contributions in the amount of only $2,029.89 (Sapp Decl., at ¶ 9 and Ex. C; *see also id.,* at ¶ 8 n.1).  It further appears from Petitioners' supplemental submission that, despite their original request for confirmation of the Arbitrator's award in its entirety, Petitioners are now only seeking this lesser amount, where the Retirement Fund is concerned.  (*See id.,* at ¶ 9 (stating that "the Retirement Fund is entitled to Judgment in the principal amount of $2,029.89").)  As Petitioners have made a colorable showing that the Retirement Fund is entitled, under the CBA, to the reduced amount calculated in their spreadsheet, but as Petitioners have made no showing whatsoever to support the higher figure contained in the Arbitrator's award, I recommend that the Retirement Fund be awarded – as Petitioners now request – the reduced amount of $2,029.89.

## 3.    Interest on the Unpaid Contributions

The Arbitrator awarded interest on the unpaid contributions to the Funds, up to the date of the award, and Petitioners have demonstrated that an award of interest was appropriate, pursuant to Section 502(g) of ERISA (which allows for the payment of interest on unpaid

contributions owed to a benefit plan) and the relevant Plan Rules. *See, e.g.*, *Laundry, Dry Cleaning Workers & Allied Industries Health Fund, Unite Here! v. Linens of Eur. N.Y. Inc.*, No. 07 Civ. 7593 (DLC), 2007 U.S. Dist. LEXIS 88952, at *3-5 (S.D.N.Y. Dec. 4, 2007) (confirming arbitrator's award of interest on unpaid contributions pursuant to ERISA and terms of the collective bargaining agreement).

As the Court has recommended, however, that the amount of the principal awarded to the Retirement Fund be reduced, the Court has undertaken to recalculate the interest that would have been due, as of the date of the award, on the reduced amount. The Plan Rules for the Retirement Fund provide for double interest on all sums due, and "[i]nterest shall be determined at an annual rate equal to 2% plus 1/2 of the prime rate charged by Citibank on the first day of the calendar quarter at the due date of the payment." (Sapp Decl., Ex. D.) Petitioners have not provided the Court with information as to the prime rate "charged by Citibank" at the relevant times, but the Court has made independent inquiry as to the historical prime rate.[8] Assuming that Citibank followed the prime rate without adjustment, the relevant rates would have been as follows, for the stated periods:

---

[8] The Court notes that, in their proposed Default Judgment, Petitioners describe the applicable interest formula as "two times 2% plus ½ of the Prime Rate," without reference to what Citibank charged. (*See* proposed Default Judgment (undocketed), submitted by Petitioners Dec. 6, 2006.)

| Calendar Quarter | Prime Rate[9] |
|---|---|
| July 1 - Sept. 30, 2004 | 4.25% |
| Oct. 1 - Dec. 31, 2004 | 4.75% |
| Jan. 1 - Mar. 31, 2005 | 5.25% |
| Apr. 1 - June 30, 2005 | 5.75% |
| July 1 - Sept. 30, 2005 | 6.25% |

Petitioners have also failed to provide the Court with information as to when Respondent's particular contributions to the Retirement Fund became "due," but the Court has conservatively estimated that the Fund contributions that Respondent was required to make in connection with work performed by Union members in a given month would have been due on the first day of the following month.

Based on these assumptions, and applying the interest formula contained in the CBA, the Court has calculated that, up to the date of the arbitration award, the Retirement Fund would have been entitled to $240.33 in interest on the unpaid principal sum of $2,029.89, as follows:

---

[9] The U.S. Prime Rate is the average rate at which 70% of the largest banks lend money to their customers, and is published in the *Wall Street Journal*.  Historical prime rates are available at http://www.wsjprimerate.us/wall_street_journal_prime_rate_history.htm

| Period | Unpaid Retirement Fund Contributions | Assumed Due Date for Contributions | Interest Rate, per CBA | Number of Days to Date of Award | Amount of Interest |
|---|---|---|---|---|---|
| Aug. 2004 | $148.32 | Sept.1, 2004 | 8.25% | 632 | $21.19 |
| Sept. 2004 | $185.40 | Oct. 1, 2004 | 8.75% | 602 | $26.76 |
| Oct. 2004 | $185.40 | Nov. 1, 2004 | 8.75% | 571 | $25.38 |
| Nov. 2004 | $148.32 | Dec. 1, 2004 | 8.75% | 541 | $19.26 |
| Dec. 2004 | $185.40 | Jan. 1, 2005 | 9.25% | 510 | $23.96 |
| Jan. 2005 | $182.40 | Feb. 1, 2005 | 9.25% | 479 | $22.14 |
| Feb. 2005 | $182.40 | Mar. 1, 2005 | 9.25% | 451 | $20.85 |
| Mar. 2005 | $171.00 | Apr. 1, 2005 | 9.75% | 420 | $19.18 |
| Apr. 2005 | $213.75 | May 1, 2005 | 9.75% | 390 | $22.27 |
| May 2005 | $171.00 | June 1, 2005 | 9.75% | 359 | $16.40 |
| June 2005 | $171.00 | July 1, 2005 | 10.25% | 329 | $15.80 |
| July 1-17, 2005 | $85.50 | Aug. 1, 2005 | 10.25% | 298 | $7.16 |
| | | | | Total: | $240.33 |

The Court recognizes, however, that this calculated total is *not* less than the amount of interest awarded by the Arbitrator to the Retirement Fund, as should be the case, given that the Court has undertaken to calculate the interest on a reduced principal amount.  Rather, the figure of $240.33 is actually slightly *higher* than the amount of interest awarded by the Arbitrator to the Retirement Fund ($238.70).  As Petitioners have provided no information to the Court regarding how the Arbitrator made her interest calculation, the Court is unable to determine the cause of this discrepancy.  Once again, however, in the absence of a showing of evident material mistake, this Court is not prepared to recommend that the arbitration award be modified to reflect any

sum higher than that actually awarded.  Accordingly, and as the CBA provides a justification for an award of interest in at least the amounts awarded by the Arbitrator, I recommend that the arbitration award be confirmed with respect to the interest amounts set out in the award, for both the Health and Retirement Funds.[10]  Specifically, I recommend that the arbitration award be confirmed to include interest of $1,087.16 on the principal amount due to the Health Fund, and $238.70 on the principal amount due to the Retirement Fund.

**B.    The Arbitrator's Award of Fees and Costs**
**Incurred in Connection with the Arbitration**

Petitioners seek to confirm the Arbitrator's award of $682.00 in fees and costs, including audit costs, incurred by Petitioners as of the date of the arbitration.  (*See* Sapp Decl, at ¶ 12.)  In awarding this amount, the Arbitrator relied on a clause purportedly contained in the CBA which provided her with the authority to include in her award against Respondent "the reasonable costs of collection, including, but not limited to the Arbitrator's fees, legal fees, auditing and accounting costs."  (Findings and Award, at 3.)  The CBA provided to this Court by Petitioners does not, however, include such a clause.  Rather, the version of the CBA provided to the Court states only that the "costs of arbitration shall be shared equally between [Respondent] and the Union."  (CBA, at ¶ 17.)[11]

---

[10] Using the same methodology set forth above, this Court has also undertaken to calculate the interest that would have been due to the Health Fund, up to the date of the arbitration award, based on Petitioners' spreadsheet of unpaid contributions to that Fund.  As that amount would have also exceeded the interest awarded by the Arbitrator, the Court recommends that the interest amounts stated by the Arbitrator to be due to each Fund be confirmed.

[11] The Arbitrator did direct the parties to share an additional $500 in Arbitrator's costs (*see* Findings and Award, at 4), which Petitioners do not raise in their application for a judgment, and which is thus not at issue.

Even with the liberal standard that applies to the confirmation of arbitration awards, an arbitrator may not exceed bounds of his or her authority. *See* 9 U.S.C. § 10; *St. Mary Home, Inc., v. SEIU*, 116 F.3d 41, 44 (2d. Cir. 1997) (the arbitration award must "draw[] its essence from the collective bargaining agreement, [as] the arbitrator is not free merely to dispense his own brand of industrial justice" (internal quotation omitted)). Here, absent any evidence that the relevant CBA actually contained a provision permitting an award of fees and costs incurred in the arbitration, that aspect of the arbitration award should not be confirmed. *See Brookside Contracting Co.*, 2007 U.S. Dist. LEXIS 83848, at *5 (modifying arbitrator's award of costs to Petitioner because it was not supported by the parties' collective bargaining agreement).

## C. Interest From the Date of the Arbitration Award to the Date of the Judgment

Petitioners also seek an award of interest on the amount of the arbitration award from the date of the award, May 25, 2006 to the date of this Court's judgment. (*See* Pet., at 3.) As noted above, both Section 502(g)(2) of ERISA and the Funds' Plan Rules provide for interest on unpaid benefits contributions, and, for this reason, I recommend that pre-judgment interest be awarded. *See Laundry, Dry Cleaning Workers and Allied Indus. Health Fund, Unite Here! v. Stainless Partners, Inc.*, Nos. 07 Civ. 3542 (CPS) (JO), 07 Civ. 3545 (CPS) (RML), 2007 U.S. Dist. LEXIS 80597, at *11-12 (E.D.N.Y. Oct. 31, 2007) (awarding prejudgment interest pursuant to ERISA and plan's rules).

As discussed above, the Plan Rules provide that interest should be calculated based on a formula of twice 2% plus ½ of the prime rate in effect on the first day of the relevant calendar quarter. The prime rate in effect on the date of the award was 7.75%, yielding an applicable Plan interest rate of 11.75%. I therefore recommend that the Clerk of the Court be directed to include,

17

in the judgment, interest at the rate of 11.75% on (a) the sum of $19,914.66 for the Health Fund

(representing $18,827.50 in principal plus $1,087.16 in pre-award interest), and (b) the sum of

$2,268.59 for the Retirement Fund (representing $2,029.89 in principal and $238.70 in pre-

award interest), for the period from May 25, 2006 to the date of the judgment.

### D.   Attorneys' Fees and Costs Incurred in Connection with the Petition to Confirm the Award in this Court

In their Proposed Findings, Petitioners requested reasonable attorneys' fees (Proposed

Findings, at ¶ 15), but did not include any documentation to support that request.  Similarly,

Petitioner's supplemental submission contained no attorney time records to justify an award of

fees.  While Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D), and the Funds' relevant

Plan Rules provide that Petitioners may seek attorneys' fees, "[a]bsent support for a specified

amount, the Court cannot determine whether [the petitioners'] request for fees and costs is

reasonable."  *Abondolo v. Sasson & Farah Glatt Kosher Meats, Inc.*, No. 06 Civ. 4835 (WHP),

2007 U.S. Dist. LEXIS 54271, at *7 (S.D.N.Y. July 18, 2007).  This Court thus has no basis to

recommend that any particular amount of fees be awarded, or to assess the reasonableness of any

proposed fee award.

I therefore recommend that no attorneys' fees be included in the judgment, but that

Plaintiffs be afforded a reasonable opportunity to make a separate fee application, should they

still wish to pursue the recovery of any attorneys' fees in this action.[12]  *See e.g., Herrenknecht v.*

*Best Rd. Boring*, No. 06 Civ. 5106 (JFK), 2007 U.S. Dist. LEXIS 28495, at * 11 (S.D.N.Y. Apr.

16, 2007) (denying fee award, subject to plaintiff's provision of accounting of fees and costs

---

[12] The fact that Petitioners made no mention of their fee request in their supplemental papers suggests that they may have decided not to pursue this request.

within 10 days of the court's order); *Brookside Contracting Co.*, 2007 U.S. Dist. LEXIS 83848, at *6-7 (same).  Any such application, if permitted by the Court at this juncture, should be accompanied by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983).

Pursuant to Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D), which also allows for the recovery of costs incurred in a successful action to recover unpaid benefit contributions, Petitioners further seek recovery of litigation costs in the amount of $350, for the filing fee that they apparently paid to commence their action in this Court.  (*See* Sapp. Decl., at ¶ 12.)  This cost is recoverable under the statute.  *See Trs. of the Unite Nat'l Health Fund v. JY Apparels, Inc.*, 535 F. Supp.2d 426, 429-30 (S.D.N.Y. 2008) (awarding filing costs in proceeding to confirm the arbitration); *Stainless Partners, Inc.*, 2007 U.S. Dist. LEXIS 80597, at *9-10 (awarding $350 filing fee in two petitions).  Accordingly, I recommend that Petitioners be awarded their requested litigation costs in the amount of $350.[13]

---

[13] In connection with their proposal of a Default Judgment (filed prior to their Proposed Findings), Petitioners also sought $130 for the cost of process service (*see* Affidavit of Mark Schwartz, Esq., in Support of Request for Interest and Costs, sworn to Dec. 5, 2006), but it appears from their Proposed Findings that Petitioners now seek only the Court filing fee.

## CONCLUSION

For all of the foregoing reasons, I recommend that, upon Respondent's default, Petitioners' motion to confirm the arbitration award (Dkt. 3), and for litigation fees and costs, be granted in part and denied in part, and that judgment be entered in Petitioners' favor as follows:

1. For the period up to May 25, 2006, the date of the Arbitrator's award:

    a. $18,827.50 in principal and $1,087.16 in interest for unpaid contributions to the Health Fund, for a total of $19,914.66; and

    b. $2,029.89 in principal and $238.70 in interest for unpaid contributions to the Retirement Fund, for a total of $2,268.59;

2. Pre-judgment interest on the above amounts, to be calculated at the rate of 11.75%, from May 25, 2006 to the date of the judgment; and

3. $350 in litigation costs.

I further recommend that Petitioners be granted a reasonable opportunity to file a separate application for the attorneys' fees they incurred in prosecuting this action, should they wish to do so.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable William H. Pauley, III, United States Courthouse, 500 Pearl Street, Room 2210, New York, New York, 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Pauley. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL

20

PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-*

*CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d

298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v.*

*Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
December 9, 2009

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Hon. William H. Pauley, III, U.S.D.J.

David C. Sapp, Jr., Esq.
Unite Here National Health Fund
Unite Here National Retirement Fund
730 Broadway
New York, NY 10003

American Leather Products, LLC
565 Barry Street, 2nd Floor
Bronx, NY 10474

21